UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIE BENTLEY,

       Plaintiff,

       v.

JDM ENTERPRISES *d/b/a McDonalds*,

       Defendant.
_____

**DECISION AND ORDER**

6:18-CV-06477 EAW

## INTRODUCTION

Plaintiff Willie Bentley ("Plaintiff"), proceeding *pro se*, has asserted claims of race and disability discrimination against defendant JDM Enterprises ("Defendant"). (Dkt. 5; Dkt. 6; Dkt. 17). Currently pending before the Court is a motion for summary judgment filed by Defendant. (Dkt. 21). For the reasons that follow, the Court grants Defendant's motion.

## FACTUAL BACKGROUND

Plaintiff failed to file a response to Defendant's Statement of Material Facts (Dkt. 21-2), as required by Local Rule of Civil Procedure 56(a). Plaintiff was advised that if he failed to file the required response, "all material facts set forth in defendant's statement of material facts not in dispute will be deemed admitted." (Dkt. 21 at 3). Accordingly, the Court treats the material facts set forth in Defendant's Statement of Material Facts (Dkt. 21-2) as true to the extent they are supported by the evidence of record. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). However, as required at this stage of

- 1 -

the proceedings, to the extent there is an ambiguity in the record, the Court has resolved the ambiguity in favor of Plaintiff.

Plaintiff is "African-American" and suffers from "back pain [and] two slipped discs." (Dkt. 21-2 at ¶¶ 2-3). He possesses a permit allowing him to use handicapped designated parking spots.[1] (Dkt. 5 at 9).

Defendant is "an owner/operator franchise restaurant" whose president is Justin MacCarthy ("MacCarthy"). (Dkt. 21-2 at ¶ 4). Plaintiff's claims are based on incidents in which restaurant manager Lia Trimble ("Trimble") questioned him about having parked in a handicapped designated parking spot in Defendant's parking lot. (*Id.* at ¶ 6). Trimble is white. (Dkt. 21-9 at 23).

At his deposition, Plaintiff testified that he would typically go to the restaurant every day for coffee. (*Id.* at 9). According to Plaintiff, in March of 2018, he came into the restaurant as usual and Trimble said to him, "Willie, why did you park in the handicapped zone? You don't look handicap [sic]. You look fine to me." (*Id.* at 8). Trimble did not ask Plaintiff to leave the restaurant. (*Id.*). Plaintiff told Trimble to leave him alone and then sat down and drank his coffee. (*Id.* at 10).

Plaintiff testified that Trimble was thereafter "rude" to him when she would hand him his coffee and that although "[s]he didn't say anything," he "could tell that she didn't really like" him. (*Id.*). Then, in April of 2018, Plaintiff claims that Trimble told him that

---

[1] "Handicapped" is the term used in the New York Vehicle and Traffic Law provision dealing with accessible parking, *see* N.Y. Veh. & Traf. Law § 1203-b, and the term used by the parties, and accordingly it is the term used in this Decision and Order.

she was going to call the police if he continued to park in the "handicapped zone." (*Id.* at 11). Plaintiff again told her to leave him alone. (*Id.*).

Plaintiff further testified that on May 9, 2018, he was at the restaurant drinking his morning coffee when Trimble arrived for work with her boyfriend and daughter. (*Id.* at 19). Trimble's boyfriend and daughter are not employees of Defendant, but were present as customers. (*Id.*). According to Plaintiff, less than ten minutes after Trimble's arrival, the police were "at [his] car." (*Id.*). Plaintiff went out to speak to the police officer, who stated that he was "just driving, looking around at handicapped stickers." (*Id.* at 20). Plaintiff told the police officer that he did not believe him and that he knew the "young lady inside" had called, to which the officer responded, "what lady?" (*Id.*). Plaintiff showed the officer his parking permit and the officer told him that he was "fine" and could "park anywhere [he] want[s] to." (*Id.* at 21). Plaintiff was not asked to move his car or to leave the restaurant. (*Id.* at 21-22). Although Plaintiff's parking permit was designed to hang up on his rearview mirror, he had it displayed on his dashboard. (Dkt. 21-3 at ¶¶ 16-7, 25).

Plaintiff then informed the general manager of the restaurant, Merica Micheaux ("Micheaux") that he would like to have a meeting with MacCarthy, and Micheaux agreed to convey that message to MacCarthy. (*Id.* at 22). After Micheaux left, Plaintiff claims that Trimble's boyfriend confronted him and tried to talk him out of speaking to MacCarthy. (*Id.*).

Plaintiff did thereafter have a meeting with MacCarthy in which MacCarthy denied any previous knowledge of Plaintiff's issues with Trimble. (*Id.* at 24). MacCarthy

apologized and Plaintiff "accepted his apology." (*Id.* at 26). However, thereafter Trimble's boyfriend called a friend of Plaintiff's and was "bad mouthing" Plaintiff. (*Id.* at 25). Plaintiff tried to get in touch with MacCarthy again to discuss the matter further, but MacCarthy did not respond to his messages. (*Id.* at 25-26).

Trimble, Micheaux, and McCarthy all submitted statements to the New York State Division of Human Rights (the "NYSDHR") that contradict in various respects Plaintiff's version of events. (*See* Dkt. 21-8 at 7-12). However, as is required at this stage of this proceedings, the Court assumes that a jury would credit Plaintiff's testimony.

## PROCEDURAL BACKGROUND

Plaintiff commenced this action on June 27, 2018. (Dkt. 1). The matter was originally assigned to the Hon. Michael A. Telesca. On July 5, 2018, Judge Telesca entered a Decision and Order granting Plaintiff leave to proceed *in forma pauperis* and dismissing his Complaint *sua sponte* with leave to amend. (Dkt. 4). Plaintiff filed an Amended Complaint on August 3, 2018 (Dkt. 5), and Judge Telesca entered a Decision and Order ordering service on August 17, 2018 (Dkt. 6).[2] The Answer was filed on November 8, 2018. (Dkt. 10).

Discovery closed on August 30, 2019. (Dkt. 13). Defendant filed the instant motion for summary judgment on September 30, 2019. (Dkt. 21). Plaintiff filed his response on

---

[2] The Amended Complaint named MacCarthy as the defendant; Defendant was substituted in his place pursuant to a stipulation of the parties filed on April 30, 2019. (Dkt. 18; Dkt.19).

- 4 -

October 9, 2019.  (Dkt. 22).  Defendant filed its reply on November 13, 2019.  (Dkt. 23).  The matter was reassigned to the undersigned on March 19, 2020.  (Dkt. 25).

## DISCUSSION

**I.     Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d

Cir. 2011)).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358.  Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.     Race Discrimination Claim

Plaintiff alleges that Defendant discriminated against him on the basis of his race. Title II of the Civil Rights Act of 1964 provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a).

"The [Second Circuit] Court of Appeals has indicated that § 2000a claims may be analyzed using the framework established for claims under 42 U.S.C. § 1981." *Stone v. New York Pub. Library*, No. 05 CIV. 10896 (DLC), 2008 WL 1826485, at *3 (S.D.N.Y. Apr. 22, 2008) (citing *Lizardo v. Denny's, Inc*., 270 F.3d 94, 106 (2d Cir. 2001)), *aff'd*, 348 F. App'x 665 (2d Cir. 2009).  "At the summary judgment stage, [the Court] appl[ies] the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), to claims arising under § 1981 that rely on indirect evidence of discriminatory intent." *Underdog Trucking, L.L.C. v. Cellco P'ship*, 514 F. App'x 31, 32 (2d Cir. 2013).  Under this framework, "the plaintiff must first

establish a prima facie case of discrimination by demonstrating," among other things, "circumstances . . . [that] give rise to an inference of discrimination." *Id.* If the plaintiff establishes a prima facie case of discrimination, "the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse action." *Id.* If the defendant meets this burden, "[t]he burden then shifts back to the plaintiff to come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Id.* at 33 (quotation omitted).

Here, Plaintiff cannot satisfy his initial burden of showing a prima facie case of discrimination. "Naked assertions of race discrimination, without any supporting facts, are insufficient to state a Section 1981 claim." *Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 457 (E.D.N.Y. 2014). Instead, a plaintiff asserting a § 1981 claim must support his allegations of discrimination with "meaningful comments, actions, or examples of similarly-situated persons outside of the Plaintiff's protected class being treated differently." *Id.*; *see also Allen v. Cty. of Nassau*, 90 F. Supp. 3d 1, 7 (E.D.N.Y. 2015) ("While the burden of establishing a prima facie case is relatively low, it is well-established that a plaintiff who can offer nothing more than his or her own conclusory assertions in support of an allegation of racial discrimination cannot survive a motion for summary judgment.").

There is no evidence in this case that any employee of Defendant ever raised or referenced Plaintiff's race in any fashion. Further, while Plaintiff alleges in his Amended Complaint that he has "never seen any of the white handicapped senior citizens questioned as to why they were parking in a handicapped parking spot" (Dkt. 5 at 6), he has not, at the

summary judgment stage, come forward with any evidence to support the conclusion that these purported "white handicapped senior citizens" were similarly situated to him and treated more favorably. *See Jenkins v. NYC Transit Auth.*, 201 F. App'x 44, 46 (2d Cir. 2006) (affirming grant of summary judgment on § 1981 claim where the plaintiff could not "point to any case" in which "a similarly situated white" individual had been treated more favorably).

Indeed, in opposition to Defendant's summary judgment motion, Plaintiff identifies no evidence whatsoever to support his race discrimination claim. The sole statement he makes that even obliquely addresses the issue is that he "occasionally would see different race's come into the lakeville McDonalds but never would stay to eat or drink [sic]." (Dkt. 22 at 3). Far from supporting a claim of race discrimination, this statement by Plaintiff indicates that he is not aware of customers of a different race who are similarly situated to him. On the record before the Court, no rational factfinder could conclude that Plaintiff was discriminated against based on his race, and Defendant is entitled to summary judgment on this claim.

### III.  Disability Discrimination Claim

Plaintiff also claims that Defendant discriminated against him on the basis of disability. Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 ("Title III"), prohibits discrimination on the basis of disability in places of public accommodation. To establish a Title III claim, a plaintiff must show "(1) that [he] is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against [him] by denying [him] a full and equal

- 8 -

opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008). Here, Defendant argues both that Plaintiff has not demonstrated that he is disabled within the meaning of the ADA and that he has not been denied a full and equal opportunity to enjoy the services that Defendant provides to the public. For the reasons that follow, the Court agrees.

As to the Defendant's first argument, "[t]he ADA defines a disability as '(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)).'" *Alexiadis v. N.Y. Coll. of Health Professions*, 891 F. Supp. 2d 418, 428 (E.D.N.Y. 2012) (quoting 42 U.S.C. § 12102(1)). Effective January 1, 2009, "Congress enacted the ADA Amendments Act of 2008 ('ADAAA') . . ., which expanded the class of individuals entitled to protection under the ADA." *Id.* In particular, the ADAAA rejected the Supreme Court's analysis in *Sutton v. United Air Lines*, 527 U.S. 471 (1999) and *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184 (2002), which had strictly defined disability under the ADA. *See id.* As one court in this Circuit has explained:

> The ADAAA expanded the interpretation of the ADA's three-category definition of "disability." For example, "major life activity" includes "caring for oneself, performing manual tasks . . . walking, standing, lifting, bending, speaking, breathing . . . and working," as well as "the operation of a major bodily function." including "neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."

*Hutchinson v. Ecolab, Inc.*, No. 3:09-cv-1848(JBA), 2011 WL 4542957, at *8 (D. Conn. Sept. 28, 2011) (quoting Pub. L. No. 110–325, 122 Stat. 3553, 3555 (2008)).

The record before the Court in this case contains the following information regarding Plaintiff's claimed disability: (1) in his complaint submitted to the NYSDHR, when asked to specify his disability, Plaintiff wrote "handicap sticker" (Dkt. 21-4 at 4); (2) in response to an interrogatory asking him to specify his disability, Plaintiff wrote "Retirement due to back pain, two slipped discs top and bottom" (Dkt. 21-6 at 7; Dkt. 21-7 at 2); and (3) Plaintiff has a parking permit allowing him to park in a handicapped designated spot (Dkt. 21-9 at 5). These facts are insufficient to establish that Plaintiff is disabled within the meaning of the ADA.

First, as to Plaintiff's possession of a parking permit, a municipality's "decision to allow an individual to park in a handicapped designated spot is in no way equivalent to a finding that Plaintiff is disabled within the meaning of the ADA." *Pinto v. Massapequa Pub. Sch.*, 820 F. Supp. 2d 404, 409 (E.D.N.Y. 2011); *see also Perdum v. Forest City Ratner Companies*, 174 F. Supp. 3d 706, 714 n.14 (E.D.N.Y. 2016) ("That Plaintiff has been issued placards permitting him to park in handicap-accessible parking spots . . . provides little, if any, support for his claim of disability because a locality's decision to allow an individual to park in a handicapped designated spot is in no way equivalent to a finding that Plaintiff is disabled within the meaning of the ADA." (quotation omitted)), *aff'd*, 677 F. App'x 2 (2d Cir. 2017).

Second, the fact that Plaintiff has a back injury and that he claims to have retired due to back pain, without more, does not establish that he is disabled within the meaning of the ADA. *See, e.g., Palmieri v. City of Hartford*, 947 F. Supp. 2d 187, 199 (D. Conn. 2013) (finding the plaintiff not disabled within the meaning of the ADA notwithstanding

his degenerative disc disease with a herniated disc); *Weigand v. Niagara Frontier Transp. Auth.*, No. 03-CV-794S, 2010 WL 584021, at *8 (W.D.N.Y. Feb. 16, 2010) (finding that the plaintiff's herniated disc did not render him disabled as defined in the ADA, even though it prevented him from working in his pre-injury position). In opposition to Defendant's motion for summary judgment, Plaintiff has come forward with no evidence to support the conclusion that his back injury substantially limits any of his major life activities. Plaintiff cannot sustain a Title III claim on this record.

The Court also agrees that Plaintiff cannot establish that he was denied a full and equal opportunity to enjoy the services provided by Defendant. Plaintiff concedes that he was never denied service, asked to leave the restaurant, prevented from parking in an accessible space, or asked to move his vehicle. The essence of Plaintiff's complaint is that Trimble did not believe that he was disabled and was rude to him because of that belief and because she did not believe he was properly displaying his parking permit.[3] However, "legislation such as the ADA cannot regulate individuals' conduct so as to ensure that they will never be rude or insensitive to persons with disabilities." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) (citation omitted); *see also Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 97 (2d Cir. 2012) ("[T]he ADA does not impose a civility code") (finding no Title III claim where owners of restaurant "became less friendly" after the plaintiff began bringing her service dog and "shouted at her when she did not properly place the dog in a

---

[3]   The fact that Trimble's actions were purportedly motivated not by a belief that Plaintiff was disabled but by a belief that he was not further undermines the viability of his ADA discrimination claim. *See Fiorillo v. United Techs. Corp.*, No. 3:13-CV-1287 (VLB), 2015 WL 5797010, at *10 n.9 (D. Conn. Sept. 30, 2015).

position where it could not suffer or cause harm"). In other words, while it may have been rude and inappropriate for Trimble to question Plaintiff on two occasions as to whether he had properly parked in a handicapped designated spot, it did not amount to a Title III violation.

With respect to the police inspection of Plaintiff's car in May 2018, there is no evidence that Trimble or the police officer ever approached Plaintiff or interfered with his presence at the restaurant on this occasion. To the contrary, it is Plaintiff's own testimony that when he was informed the police were looking at his car, he affirmatively went outside and engaged with the officer. (Dkt. 21-9 at 21). Further, the officer merely confirmed that Plaintiff had a parking permit and that he was free to park in a handicapped designated spot. No one (apart from Trimble's boyfriend, who is not employed by Defendant) is alleged to have spoken to Plaintiff in a derogatory fashion in May 2018 or to have suggested in any manner that he could not park in an accessible spot. No rational jury could find a Title III violation on these facts. Accordingly, Defendant is entitled to summary judgment on this claim.

## **CONCLUSION**

For the foregoing reasons, the Court grants Defendant's motion for summary judgment. (Dkt. 21). The Clerk of Court is directed to enter judgment in favor of Defendant and to close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: September 3, 2020
       Rochester, New York